IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

JONATHAN S. BRYANT                                                                          PLAINTIFF

v.                                    Civil No. 10-3069

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                              DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Jonathan Bryant, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claims for disability insurance benefits ("DIB") and supplemental insurance benefits ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.     Procedural Background:**

The plaintiff filed her applications for DIB and SSI on August 15, 2007, alleging an onset date of May 1, 2006, due to the residuals of a fractured right patella and meniscus injury, right hip pain, right leg pain, back pain, headaches, hypertension, depressive disorder, and anxiety disorder. Tr. 38, 142-153, 173, 187-188, 193-194, 211-212, 226. Her applications were initially denied and that denial was upheld upon reconsideration. Plaintiff then made a request for a hearing by an Administrative Law Judge ("ALJ"). An administrative hearing was held on February 20, 2009. Tr. 28-72. Plaintiff was present and represented by counsel.

At this time, plaintiff was 39 years of age and possessed the equivalent of a high school education. Tr. 32-33, 35. He had past relevant work ("PRW") experience as a laborer and construction worker. 65-66, 174, 227-233.

On November 18, 2009, the ALJ found that plaintiff's essential hypertension, depressive disorder, and anxiety disorder were severe, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 82-84. After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform unskilled light work involving occasional climbing, balancing, stooping, kneeling, crouching, and crawling and interpersonal contact that is incidental to the work performed. Tr. 84-87. With the assistance of a vocational expert, the ALJ found plaintiff could perform work as a small parts assembler, inspector, and machine tenderer. Tr. 88-89.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on June 12, 2010. Tr. 1-4. Subsequently, plaintiff filed this action. ECF No. 1. This case is before the undersigned for report and recommendation.

**II.    Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the

Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003).

Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.    Discussion:

Of particular concern to the undersigned is the ALJ's determination that Plaintiff's right knee, hip, and back pain were non-severe impairments. Social Security Ruling 85-28 instructs that "[g]reat care should be exercised in applying the not severe impairment concept. An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities. *See Bowen v. Yuckert,* 482 U.S. 137, 153, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *id.* at 158, 107 S.Ct. 2287 (O'Connor, J., concurring); 20 C.F.R. § 404.1521(a). If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two. *Page v. Astrue,* 484 F.3d 1040, 1043 (8th Cir. 2007).

In May 2004, Plaintiff injured his right knee at work, when he missed a step. Tr. 253-258, 272-276, 295-306. He was taken to the emergency room where it was discovered that he had suffered a patella dislocation. Plaintiff was administered painkillers while awaiting x-rays. By the time his knee was x-rayed, the patella had spontaneously reduced. However, an MRI showed a fairly significant disruption of the medial patellar retinaculum. On May 18, Plaintiff underwent medial patellar retinacular repair and lateral release surgery. Tr. 253-258, 270-271.

On March 23, 2009, Plaintiff underwent a general physical exam with Dr. Randy Conover. Tr. 510-514. Plaintiff reported his main difficulty to be pain in his right knee and difficulty sleeping. A few years prior, his knee went out while he was carrying a heavy object.

An examination revealed a full range of motion in all areas with no muscle atrophy, muscle spasms, or muscle weakness.  Dr. Conover did note some tenderness on the "right 2nd and 3rd," in the category of sensory abnormalities, but did not elaborate or explain this finding.  Plaintiff could walk on his heels, but refused to walk on his toes secondary to pain in his right knee.  Dr. Conover diagnosed Plaintiff with anxiety, depression, back pain, right knee pain, fibromyalgia, and Morton's neuroma of the right foot.  He concluded Plaintiff could handle, finger, see, hear, and speak.  His ability to walk, stand, sit, and lift was noted to be mildly limited, but no definition of mild was provided.  Tr. 510-514.

On April 7, 2010, an MRI of Plaintiff's right knee revealed a complete tear of the medial collateral ligament with retraction and buckling of the medial collateral ligament.  Tr. 542, 550.

On April 22, 2010, an x-ray of Plaintiff's lumbar spine revealed mild spondylosis.  Tr. 550.  The lumbosacral disk space was mildly decreased in height with minimal degenerative changes.  Tr. 550.

On May 1, 2010, Plaintiff was treated for complaints of left hip pain.  Tr. 561-566.  He stated that he was getting up from the couch when he heard a loud pop followed by a sharp pain in his left hip.  The doctor noted that he was able to stand and perform toe standing.  X-rays revealed osteoarthritis without any acute abnormalities.  Plaintiff was administered Decadron, Ativan, and Toradol injections and prescribed Naproxen. After reporting that the injections were helping, Plaintiff was discharged home.  Tr. 561-566.

On May 2, 2010, Plaintiff returned to the hospital with complaints of left hip pain radiating into the left leg, numb and tingly toes on the left side, back pain, and urinary difficulties.  Tr. 548-554, 567-571.  An examination revealed no depression or anxiety at this

5

time. He exhibited a normal range of motion in all areas with some tenderness over the left gluteal/sciatic region. Plaintiff had a negative straight leg raise test with pain behind the knees bilaterally. He was diagnosed with sciatica of the left leg and mild diffuse lumbar disk degeneration, and discharged home with prescriptions for Cyclobenazprine, Naproxen, and Oxycodone. Tr. 548-554, 567-571.

On May 6, 2010, Plaintiff presented at the hospital after taking eighteen Vicodin during the day, ten of which were taken over the previous two hours. Tr. 573-584. He indicated that he was attempting to alleviate his hip pain. His case was reviewed and it was determined that his dose was not in the toxic range. Plaintiff complained of continued left sided back pain that radiated down into his left flank. He stated that the Vicodin was no longer helping. Plaintiff was administered Prednisone. A CT scan of his lumbar spine showed mild to moderate degenerative changes consistent with osteoarthritis and degenerative disk disease. Subacute fractures, including a left rib fracture and L2 transverse process fracture, a comminuted left sacral ala fracture with sacroiliac joint involvement as well as a right sacral posterior arch fracture. Plaintiff was diagnosed with an unintentional overdose and sciatica. An orthopedic consult was strongly recommended. Plaintiff was prescribed a Medrol Dose Pack and Flexeril. Tr. 573-584.

In May 2010, Plaintiff was treated for chronic lower back pain and hip pain on at least two occasions. Tr. 586-592. He was administered Ativan, Benadryl, and Compazine. Tr. 586-592.

In spite of this evidence, the ALJ concluded that Plaintiff's knee, back, and hip pain were not severe impairments. He based this largely on the fact that Plaintiff did not seek out consistent treatment for his pain. However, the evidence also makes clear that Plaintiff had no

6

money to obtain medical treatment. On March 30, 2005, Dr. Todd Oliver reported Plaintiff to collections for an overdue balance of $2183.00. Tr. 262-266, 268-269. Records indicate that an initial payment plan of $50.00 per month was scheduled, but was lowered to $25.00 when Plaintiff's wife called and said they were having financial difficulties. Then, in February 2005, Mrs. Bryant told Dr. Oliver's office that they had an attorney and had been advised not to pay, but hung up when asked for the name of their attorney. Tr. 262-266, 268-269. We believe that a lack of sufficient financial resources to obtain treatment to remedy a disabling impairment may be an independent basis for finding justifiable cause for failing to seek consistent treatment. *See Brown v. Heckler,* 767 F.2d 451, 452 (8th Cir. 1985), *see also Tome v. Schweiker,* 724 F.2d 711, 714 (8th Cir. 1984). Accordingly, we find that remand is necessary to allow the ALJ to reconsider the severity of Plaintiff's impairments and his financial ability to obtain treatment for these conditions.[1] A new RFC determination should also be made, taking into consideration Plaintiff's knee, hip, and back impairments, as it is likely these impairments would impact his ability to sit and stand for long periods of time and climb, balance, stoop, kneel, crouch, and crawl.

### IV.    Conclusion:

Based on the foregoing, we recommend reversing the decision of the ALJ and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **The parties have fourteen days from receipt of our report and recommendation**

---

[1] We do note Plaintiff's history of alcohol abuse. However, we do not believe his use of alcohol, alone, justifies a total failure to consider the objective medical evidence in this case. *See Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000) (holding that the ALJ is not free to ignore medical evidence, rather must consider the whole record).

**in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this the 12th day of September 2011.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)